## Loeffler Estate. No. 1

*Eugene A. Caputo*, for petitioner.

SOHN, J., August 2, 1949.—Beaver Trust Company was appointed guardian of the estate of Louise K. Loeffler, a weak-minded person. Dr. Thomas A. Loeffler and Louise K. Loeffler are husband and wife, and the owners as tenants by the entireties of a tract of land having erected thereon a dwelling house, situate in the Borough of Ambridge, in this county. On July 13, 1949, upon petition of the guardian, in which the husband

joined, the court authorized sale of this real estate for the sum of $14,000.

We have before us the petition of Dr. Thomas A. Loeffler, in which it is averred that he expended certain sums of money for the maintenance and repair of the premises. He requests that he be reimbursed out of the fund for these expenses. The property was acquired in 1938, and occupied by the husband and wife until her admission to Torrance State Hospital in 1938. Since 1938 she has been a patient in the hospital. About six months after her admission the property was rented by petitioner at $60 per month. After December 1947 the rent was $75 per month. Petitioner collected the rent and paid $50 per month on principal and interest on a mortgage, and taxes assessed against the property. The amount of rent in excess of these expenses was used in improving the property. Petitioner claims reimbursement for several items, which we will refer to separately in our discussion.

First, the sum of $1,230 for repairs and improvements to the property. This represents money heretofore expended by petitioner from time to time for those purposes. Petitioner requests the right to be reimbursed from the fund, in the amount of $749.08 for money expended by him for the care and maintenance of his son, a patient in the Harrisburg State Hospital. He asks credit against the fund for $117.50 due the Potter Title and Trust Company of Pittsburgh. This is a balance due on the purchase of a furnace. This debt is secured by a judgment note executed by petitioner. He requests that $2,890.47, the balance presently due the Torrance State Hospital for maintenance of his wife, be charged against the wife's share of the proceeds from the sale of the property. He requests that there be deducted from the sale price the amount due on the mortgage and expenses incident to the sale, in the amount of $4,251.49.

Petitioner requests that the tenancy by the entireties be terminated and each tenant be awarded one half the net sale price of the property. We agree that the tenancy by the entireties should be terminated, and each tenant should be awarded one half the net proceeds from the sale of the property.

In Interboro Bank & Trust Co., Appeal, 359 Pa. 315, 318, Mr. Justice Patterson said:

"A tenancy by the entireties may be terminated by agreement of the parties. In *Berhalter v. Berhalter*, 315 Pa. 225, 228, 173 A. 172, it was said: 'It has long been held that deeds of grant will operate to extinguish the right of survivorship and destroy a joint tenancy. Such a result is predicated on an agreement, and an estate by entirety with the incidents of survivorship may always be destroyed by agreement of the parties.' If neither party were under a disability, the property held by the entireties could have been sold, the incidents attaching to said estate destroyed and the proceeds of sale divided equally between them. The guardian may be authorized by the court to hold all of the proceeds of the sale by agreement with the other spouse. The court, possessed of all powers which the incompetent could have exercised, may likewise direct that the entireties estate be terminated and the guardian hold one-half the net proceeds for her."

The duty of the court is referred to in two opinions by Mr. Justice Schaffer (later chief justice), as follows:

In Davidson's Estate, 323 Pa. 113, he said:

"Because of the peculiar responsibilities which are cast upon the judges of the courts of common pleas in connection with the administration of lunatic's estates, it is important that they should have the fullest information and aid in discharging their exacting duties."

In Commonwealth ex rel. Flowers et al. v. Flowers, 326 Pa. 138, he said:

"In the very recent case of *Davidson's Estate*, 323 Pa. 113, 116, 185 A. 782, we pointed out that, 'Lunatics, their property, proceedings affecting them and their status before the courts, are in a class apart from all others: *Riebel's Est.*, 321 Pa. 145, 184 Atl. 118. The committee is the mere bailiff of the court which appoints him: *Black's Case*, 18 Pa. 434. The lunatic is in effect the ward of the court and his estate is in custodia legis: *Shaffer v. List*, 114 Pa. 486, 7 Atl. 791.' It is always to be borne in mind that the estate is the estate of the lunatic, and that he may regain his reason; when he does his property is to be handed back to him: *Wright's App.* 8 Pa. 57; *Riebel's Est.*, 321 Pa. 145, 184 A. 118."

The Act of June 1, 1915, P. L. 661, sec. 3 as amended, 71 PS §1783, is:

"The husband, wife, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do shall be liable to pay for the maintenance of any such person, as hereinafter provided. Whenever either of the owners of any property held by entireties shall be maintained in any institution as aforesaid, and the separate property of such inmate shall not be sufficient to reimburse the Commonwealth, such property held by entireties shall be liable for the same to the extent of any order that any court of record of this Commonwealth may make against the spouse of such inmate, either during the lifetime of such inmate or after his or her death. The liability for the support of such inmate is hereby declared to be the joint liability of such owners to the extent of such order and enforcement against their joint as well as their several properties."

In referring to this act, President Judge Waychoff said in Commonwealth v. Hoge, 39 D. & C. 564, 565:

"The question for us now to determine is who is primarily liable for the maintenance of this woman in the public hospital. The Commonwealth of Pennsylvania, the plaintiff, seeks to recover from William M. Hoge, father of the said Thelma Dillinger. Defendant, without denying the secondary liability of the father, William M. Hoge, nevertheless takes the position on this motion that he is only secondarily liable. Insofar as the liability of either father or husband for the support of an insane married woman in a lunatic hospital is concerned, it has not been changed by the Act of June 1, 1915, P. L. 661, as amended by the Act of May 10, 1921, P. L. 438. Insofar as it declares that the husband, if legally able, is liable to pay for the support of an insane wife, the act of assembly is simply declaratory of what the law was before the passage of the act. In Pennsylvania the husband is and always has been, without regard to the act of assembly, liable for the necessary support of his insane wife while in a public asylum. The husband is primarily liable for the support and maintenance of his wife and this liability cannot be waived: *Thomas' Estate*, 24 Dist. R. 31, 34; *Ward's Estate*, 22 Dist. R. 564. This liability of the husband would very probably exist if there were no legislation upon the subject."

The precise question is whether or not the husband is primarily liable where there are funds held by the incompetent and her husband as tenants by the entireties. The fund for distribution in the instant case is the proceeds of an estate by the entireties. Neither the husband nor the wife presently have other assets out of which they are able to pay the amount due the Commonwealth for the maintenance of the wife. We are of the opinion that such a situation was within the contemplation of the legislature when the provision as to payment from an estate by the entireties was enacted. Therefore, the claim of the Commonwealth should be

paid from the fund. This conclusion is without prejudice to the right of the Commonwealth to proceed in the future against the husband, who is gainfully employed, on the theory that hereafter he is primarily liable for the maintenance of his wife. The tenancy by the entireties has now been terminated, and each spouse possesses a separate fund.

The amount due on the mortgage and expenses incident to the sale is $4,251.49. These items should be deducted from the sale, and $2,890.47 is due the Commonwealth; in all, the sum of $7,141.96. The share of each tenant is $3,429.02.

Beaver Trust Company, guardian, does not object to the allowance out of the wife's separate estate of the claim of Torrance State Hospital if the court concludes, as a fact, that petitioner is indigent. We are unable to reach such conclusion. A person is "indigent" who is destitute of property or means of comfortable subsistence; one who is needy or poor. The word "indigent" means needy and poor and applies to those who are destitute of property, and the means of comfortable subsistence. The term "indigent" is commonly used to refer to one's financial ability and ordinarily indicates one who is destitute of means of comfortable subsistence so as to be in want: 21 Words and Phrases 152. Petitioner in this proceeding receives $3,429.02. He is gainfully employed, and his income is approximately $400 per month. Under these circumstances we cannot conclude, as a fact, that he is indigent.

Beaver Trust Company, guardian of the estate of the wife, objects to the allowance of the other amounts. It is averred that the obligation to maintain and support the wife and son is imposed by law on the husband, and therefore the request of petitioner should be denied. We agree with this contention. There is equity in the request by petitioner, but we know of no legal authority whereby the request can be granted.

*Order*

And now, to wit, August 2, 1949, it is now ordered, adjudged and decreed that the following items be paid from the proceeds of the sale of the real estate: Ambridge National Bank, $3,421.49; K. F. Wilson, $500; Hon. Eugene A. Caputo, $300; Martin S. J. Skapik, $15; John Urda, $15; Commonwealth of Pennsylvania, $2,890.47, leaving a balance of $6,858.04. It is further ordered, adjudged and decreed that the tenancy by the entireties of Thomas A. Loeffler and Louise K. Loeffler, in the net proceeds from the sale, to wit, the sum of $6,858.04 be, and it is hereby terminated, and there is hereby awarded to the Beaver Trust Company, guardian of the estate of Louise K. Loeffler, the sum of $3,429.02, and to Dr. Thomas A. Loeffler, the sum of $3,429.02.